**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **CASE NO. 1:17-CR-2-KBJ** |
| **Brian Dennis Hess** | ) | |
| **Defendant.** | ) | **JUDGE Ketanji Brown Jackson** |
| | ) | |
| _____ | ) | |

## SENTENCING MEMORANDUM

      Brian D. Hess comes before the Court having plead guilty to the distribution of child pornography.  Although the sentencing guidelines call for a very lengthy sentence, the government and the defendant both respectfully request this Court impose the mandatory minimum sentence of 60 months incarceration.  Mr. Hess has never been in trouble before, has been a productive and respected member of his community and there is no evidence that aside from this particular incident, he has ever had any improper conduct with a child.  This case presents the Court with a situation where the imposition of a guideline sentence would not fulfill the requirements of 18 U.S.C. § 3553(a)(2) to impose a sentence "sufficient, but not greater than necessary" to achieve the statutory sentencing goals.  Indeed, the Pre-Sentence Report indicates that a guidelines sentence could create an unwarranted sentencing disparity.

**INTRODUCTION**

Mr. Hess is a thirty-four year old man who comes from Fulton County, Pennsylvania a county situation in the rural Appalachian region of the state.  As with most people from that area, he has made his living largely through manual labor.  By all accounts, he has been an honest, hard-working member of the community who has had no serious problems with the law in the past. He has strong family support and, until his incarceration, lived with his fiancée who works as a protein chemist.  They intent to marry upon his release from custody

This case began as an undercover sting by law enforcement officers in the District of Columbia.  Mr. Hess was originally contacted and asked to produce a picture of his daughter.  He downloaded a stock picture of an underage girl from the internet and sent to the office.  In reality, , the child was not his daughter, and he neither had he ever met or known this child.   The photo has been identified by NCMEC as a child that was involved in a prior sexual abuse case, not involving or having anything to do with Hess.

I.    **APPLICATION OF THE STATUTORY SENTENCING FACTORS TO THE FACTS OF THIS CASE**

18 U.S.C. § 3553(a) provides a list of factors that a District Court must consider when determining an appropriate sentence.  These include: the nature and circumstance of the offense and the characteristics and history of the defendant; the need for the sentence to afford adequate deterrence and protect the public from further offenses committed by the defendant; the kinds of sentences available; the sentencing guideline range; any pertinent policy statements; and the need to prevent unwarranted sentencing disparities, among other.  *Id*.  The application of these factors

in this particular case indicates that a sentence of 60 months, as recommended by both the government and the defense is warranted.

**A.  The Nature and Circumstance of the Offense and the Characteristics and History of the Defendant.**

This is a case where the circumstances of the offense and the particular characteristics of Brian Hess seem incongruous.  Certainly, Hess found himself caught up in a serious criminal act. He had obviously viewed child pornography, and sent a photograph of an underage girl to a law enforcement officer, an offense that Mr. Hess himself acknowledges is not only legally wrong but destructive to the victims, himself and his family.   On the other hand, Mr. Hess have never hurt and would never hurt a child.  He now realizes that by dabbling in child pornography, he was providing a market to those who manufacture the pornography.  He deeply regrets his involvement in this offense and understands his need for punishment.

Mr. Hess is completely new to the criminal justice system, and has led a law-abiding life to this point.  At the time of his arrest, he was self-employed and operated a small business from home called Hess Construction; which specialized in building, remodeling homes and other similar types of work.  Numerous neighbors, friends and family member have written character letters, appended hereto, to give the Court an idea of his character  These letters describe a particularly caring, helpful and contributing member of society.

Of particular note is the letter from Travis L. Kendall, the elected District Attorney of Fulton County, who wrote, "Brian is a good person- hardworking, honest, modest, diligent, smart, interesting, fun to be around" In addition he wrote; "I had him do work for my elderly mother. I recommended him to anyone that I knew needed his talents. Everyone appreciated and

trusted Brian."  District Attorney Kendall finalizes his letter stipulating "I do understand that criminal laws must be enforced simply to promote larger societal interests. <u>Please trust me- you will not sentence a better, more honest, more productive, less dangerous, person this year</u>.  This is a case where alternatives to incarceration should be given serious consideration." (emphasis added).  Unfortunately, an alternative to incarceration is not available to the Court.

Pastor William Chilcote, from "My Father's House Ministries" wrote "I have known Brian and is family all of his life, and his family have been parishioners for over ten years at the congregation I pastor. I believe I am in a position to speak to Brian's moral character…" "I believe Brian is, in short, a good person.  He has always been dependable and a hard worker.  He has a strong sense of loyalty to family and friends.  Obviously, Brian made a bad choice, but after visiting with him while under house arrest, I believe he now regrets that choice and has a sincere desire to do what is right."

Jack A. Clark,  Mr. Hess's previous employer , described him as follows: "Brian began working with me on my family's farm approximately twenty-two years ago. At that time, he helped with taking care of the animals, putting hay in the barn, and cleaning manure. He was always hard-working and prompt." In addition, his previous employer wrote "…as a carpenter/laborer. He was always early to meet with his crew, brought the proper tools and never complained of the hours or weather conditions. Brian is a good carpenter. He is very conscientious of his work."

His fiancé Ms. Clark has indicated that Hess is "a great person who is very kind and understanding. He's always been supportive of me and I support him 110 percent in this. I really think the punishment for this is too severe. We had planned on getting married and I'd rather so that sooner than later".

B. **The Need for Deterrence and to Protect the Public**.

The nature and circumstance of the offense and the particular characteristics of the defendant speak directly to the need for deterrence and protection of the public. Brain Hess is not a habitual criminal who has previously been incarcerated or been under any of court supervision. He has therefore not previously been afforded the opportunity for rehabilitation and failed as so many in the criminal justice system have. Nor has he shown from his previous life that he will continue to be a danger to the community; to the contrary, he has demonstrated that if given a chance, he will conform to the law. Indeed, how many defendants appearing before a federal court for sentencing can count among their supports a state prosecutor and a retired state trooper? The insights of these law enforcement professionals are valuable.

Moreover, to the extent there is a need to protect the public and deter others from involving themselves on child pornography, the mandatory minimum sentence of 60 months accomplishes these goals.

C. **The Sentencing Guidelines and Sentences Available**.

The sentencing guideline range, as properly calculated by the Probation Department is 151 to 188 months. The mandatory minimum sentence is 60 months. Although there may be instances where a guidelines sentence would be appropriate, the Supreme Court held long ago that the guidelines are advisory and can be completely rejected by the Court. *United States v. Booker*, 543 U.S. 220 (2005). The sentencing guidelines for child pornography in particular should be considered less persuasive than others because they have no basis in empirical fact and could be considered arbitrary. See *United States v. Grober*, 624 F.3d 592 (3rd. Cir. 2010); see also, *United States v. Dorvee*, 616 F.3d 174 (2nd. Cir. 2010).

With respect to these particular guidelines in particular, some courts have completely rejected the guidelines.  In *United States v. Duhon*, for example the Fifth Circuit affirmed a sentence of 60 months of probation given that the district court "made clear that it believed probation was appropriate because of a variety of characteristics particular to [the defendant's] case, including the absence of a criminal history and its belief that [he] would benefit from continuing treatment with his doctor." 541 F.3d 391, 397 (5th Cir. 2008).

The case of *United States v. Stall*, is likewise significant.  In that case, the Sixth Circuit affirmed a sentence of a single day of incarceration followed by 10 years of supervised release, given that the district court gave weight to "the defendant's exceptional expression of remorse, immediate cooperation with the investigation, commitment to counseling, and demonstrated promise for rehabilitation." 581 F.3d 276, 289 (6th Cir. 2009).  In the case of United States v. Polito, the Seventh Circuit affirmed a sentence of one year of house arrest and five years of probation given that the district court stated that there was no evidence that the defendant would be a threat to the community or young children, that the defendant had no prior criminal history, and that the defendant "had conducted himself in a very positive way, receiving mental health treatment, maintaining employment, and avoiding any problem with the law . . . ." 215 F. App'x 354, 357, 2007 U.S. App. LEXIS 2121, (5th Cir. 2007).  See also, *United States v. Frye*, 851 F.3d 1329 (D.C. Cir. 2017) (holding that District Court may, but are not required to reject the guidelines).In this case, the guidelines should be rejected, and Mr. Hess should be sentenced to the mandatory minimum as recommended by the government and the defense.

D.  **Any pertinent Policy Statements**.

In February 2013, the Sentencing Commission released a report to Congress on the child pornography guidelines for non-production offenders. See U.S. Sentencing Commission, Report to the Congress: Federal Child Pornography Offenses (2012) ["Child Porn Report"]. The Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences for offenders sentenced under USSG § 2G2.2, pursuant to its statutory

duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," id. at ii, and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." Id. at ii, 323.

The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." Id. at iii, xi; id. at 209, 323. It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." Id. at 6. Because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," id. at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," id. at 323. The cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, result in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." Id.

Offenders "vary widely in their technological sophistication," with some relatively unsophisticated offenders using widely available peer-to-peer networks, like Lime Wire, to receive or distribute material "in an indiscriminate manner," while others "use their technological expertise to create private and secure trading 'communities' and to evade, and help others evade, detection by law enforcement." Id. at viii, 61-62.

The Commission reported that approximately one quarter of federal offenders "received child pornography from commercial websites, thereby fostering the commercial markets," and 11 one quarter engaged in "personal distribution" to another individual through bartering or trading of images, also described as a "market." Id. at 98-99. There is, however, no social science research available to support the theory that criminal punishments "have affected commercial or non-commercial 'markets' in child pornography since the advent of the Internet and P2P filesharing." Id. at 98

The Commission reported that "not all child pornography offenders are pedophiles or engage in other sex offending." Id. at 104. Approximately one in three offenders sentenced under § 2G2.2 "have engaged in" what the Commission deems "sexually dangerous behavior," criminal or non-criminal, past or present, based on allegations in PSRs, arrests, and convictions. Id. at ix-x, 204-05. However, "the current guideline measures for offender culpability (e.g., for distribution of child pornography, number of images possessed, possession of sado-masochistic images) are generally not associated with significantly higher rates of [criminal sexually dangerous behavior]." Id. at 204.

The Commission concluded that "[t]he current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual 12 dangerousness." Id. at xx; see also id. at 321. The Commission asked Congress to enact legislation to provide it authority to amend the guidelines that "were promulgated pursuant to specific congressional directives or legislation directly amending the guidelines." Id. at xviii, 322.

The Commission recommends that the specific offense characteristics related to the types and volume of images, distribution, and use of a computer "be updated to account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images, and other aspects of an offender's collecting behavior reflecting his culpability (e.g., the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)," and "to reflect offenders' use of modern computer and Internet technologies." Id. at xviii-xix, 322-23.

### E.   Any Unwarranted Sentencing Disparities.

Finally, the Probation Department has identified unwarranted sentencing disparities as a factor the Court should consider in fashioning an appropriate sentence.  The average sentence in a non-production child pornography case appears difficult to discern, however, an analysis of district court sentences by the United States Sentencing Commission suggests that below guidelines sentences may be more common than guidelines sentences for these particular offenses.   See Analysis at:   http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/booker-reports/2012-booker/Part_C11_Child_Pornography_Offenses.pdf Certainly, in this particular case, the imposition of a guideline sentence would appear to be disparate from other sentences imposed.

## II.   CONCLUSION

Based upon all of the factors listed above, it is respectfully requested that the Court impose a sentence of 60 months as recommended by both the government and the defense.

Respectfully submitted,


/s/ Dennis E. Boyle, Esq.
Boyle Frost, Attorneys at Law
1629 K Street NW, Suite 300
Washington, D.C. 20006
Office: (202) 640-1415
Facsimile: (888) 235-8405
*Dennis.boyle@boylefrost.com*
Counsel for Brian Dennis Hess

Date: June 27, 2017

III.    **APPENDIX OF LETTERS OF REFERENCE**

To whom it may concern,

I am Brian Hess's 82 year old grand-mother and would like to give my testimony on his behalf.

While I am so very glad and thankful to the Authority (F.B.I) etc for doing a wonderful job of protecting our babys and youth from preditors I can assure you my grand-son is not a child abuser. Yes, he made a terrible mistake for messing around with porn, but he is innocent of the crime. By satisfying his curiosity he has got himself in this situation and is paying for that mistake over and over. He has never been in any trouble with the law in his life and has never molested anyone. Sence this this first offense could you possibly give him a chance to prove he is innocent and allowing him to go on with his life. Thank-you for listening.



**Betty J. Hess**
375 Lions Park Dr. #306
McConnellsburg, PA 17233-8199

Travis L. Kendall
19991 Great Cove Road
McConnellsburg, PA 17233

March 27, 2017

Your Honor:

I am the elected District Attorney of Fulton County, Pennsylvania. I do not take lightly my responsibilities in that regard to protect the citizens of my community from crime. Less understood by the public, probably, is my responsibility to seek justice more so than convictions or sentences; to seek to do what is right regardless of the consequences. That brings us to Brian Hess.

I have known Brian for about ten years. I was playing bass in a rock and country cover band and Brian joined up as the drummer. We practiced two or three nights a week for years and also played at local service clubs and for parties. Mostly though, the band was about middle aged music lovers having fun. Brian was the youngest member and by far the most talented. Eventually the keyboard player (the public defender) was elected to the minor judiciary and because of the conflict between that office and my own band fell away. When you practice music with a person about two hours a night, two or three times a week, for three or four years, you get to know them really well. Brian is a good person—hardworking, honest, modest, diligent, smart, interesting, fun to be around.

Brian's occupation was as a self-employed building contractor/handyman. I had him do work for me. I had him do work for my elderly mother. I recommended him to anyone that I knew who needed his talents. Everyone appreciated and trusted Brian.

I cannot explain or excuse the crime that brings Brian before you. I cannot even understand it. Curiosity? Risk taking? Self-destructiveness? I don't know. What I do know from 27 years of practicing small town law, nine of them as the District Attorney, is that sometimes good people do bad things—all people, sometimes, do stupid things. Brian is too fundamentally good for me to ignore him, or distance myself from him, during this unfortunate chapter in his life.

I do not know what sentencing alternatives will be available to you. I do understand that criminal laws must be enforced simply to promote larger societal interests. Please trust me—you will not sentence a better, more honest, more productive, less dangerous, person this year. This is a case where alternatives to incarceration should be given serious consideration.

Respectfully,

Travis L. Kendall

# My Father's House Ministries
## International, Inc.

Pastor William Chilcote
P.O. Box 269,
McConnellsburg, PA 17233

E-mail: mfhfamily77@gmail.com
Web: www.mfhfamily.com
Phone: (717) 485-4680

April 5, 2017

Subject: Character reference for Brian Hess

Dear Judge

I am writing in reference to Brian Hess, who is being sentenced.

I have known Brian and his family all of his life, and his family have been parishioners for over ten years at the congregation I pastor. I believe I am in a position to speak to Brian's moral character, so I hope you will take this letter into account when making your decision.

I believe Brian is, in short, a good person. He has always been dependable and a hard worker. He has a strong sense of loyalty to family and friends. Obviously, Brian made a bad choice. But after visiting with him while under house arrest, I believe he now regrets that choice and has a sincere desire to do what is right.

Knowing Brian as well as I do, I don't think imprisonment is a good option for him. Please consider other options for him like additional requirements during house arrest and/or probation. Such as; being under a pastor's counsel, attending church regularly, participating in a small accountable/support group, etc.

It must be difficult for you to make decisions like this when you don't actually know the person standing in front of you, so I hope you will look at my letter and others you're receiving, and understand that Brian is the kind of person around whom people rally. That has to say something, so please let that be a factor in your decision.

Thank you,

William Chilcote

Pastor William Chilcote
My Father's House Ministries International, Inc.

Elizabeth Josephson
476 Chestnut Street
Munson, PA 16860

March 1, 2017

Your Honor,

I am writing you on behalf on Brian Hess who will be appearing in your court.

I met Brian Hess through his significant other, Falon Clark. I started working with Falon in January of 2015. I met Brian and his mother, Pattie and father, Denis when I started going horseback riding with Brian, Denis, and Falon.

I have spent many hours outside of work with Falon and Brian riding horses. Brian always made sure that Falon and I had everything we needed and that our horses were tacked up properly. When I first started riding with them, Brian would have my horse exercised before I got there and would tack her for me and recheck the cinch to make sure it was still tight throughout the ride. He has gradually let me take on more of the responsibilities, but If I were to have any questions or issues he was always very attentive.

I may not have known Brian for a majority of my life, but in the time I have known him I would considered the way he treated me to be almost like he was a big brother. Brian treats his friends and loved ones with care and respect, he is great with his horses, and he works hard to support himself and his family.

I feel that you can tell a lot about a person by listening to how their significant other talks about them when they aren't around. This incident was only the second time that Falon had ever come into work upset and/or angry with Brian since I've been there. The first was because he wasn't taking care of his half of the laundry.

I was completely taken aback when Falon told me that Brian had been arrested. I could not imagine Brian committing these crimes, it just doesn't seem to be in his nature.

Brian regrets and is remorseful of the poor choices he made that put him in this situation. He realizes the severity of the impact not only on his life, but also on the lives of all those that love him and care about him.  I would request that you consider leniency in your sentencing and consider his lack of previous offenses and an otherwise clean record and only separate him from his loved ones for the minimum amount of time for these crimes.

Thank you for your consideration.

Sincerely,

Elizabeth Josephson

# Sarah Lazar
# 1520 Cole Road
# Hustontown, PA 17229

February 7, 2017

Your Honour,

I have known Brian Hess on a personal level for the last four years.

I can say that in all the time I have known him, he has been a decent, hardworking and trustworthy person. Someone I consider a true friend. Someone who would always help me out when needed. Brian would go out of his way to help anyone in need. He personally helped me move my horse, using his trailer, time, and fuel without accepting any form of payment. During our years of friendship, I moved three times. Each time, Brian would help me load and unload my belongings and install my television stand without accepting any form of payment.

Brian would help me out of the kindness of his heart. Brian has a very generous, giving heart. He is very talented in construction and takes pride in his workmanship.

If you have any further questions, please contact me at 908-268-7933. Thank you for your consideration.

Yours faithfully,

Sarah Lazar

Cree C.E Fix
PO Box 353
Hustontown, PA 17229

February 7, 2017

Your Honour,

I am writing this letter in hopes that it will help you to see what kind of person Brian Hess is, despite the contraventions that led us all to this point.

I have known Brian Hess as a friend for twenty years and in that time I have seen many characteristics of Brian's personality. I have always found Brian to be extremely kind, dependable, and well regarded among his peers. He has helped me out in many ways; for example, I needed a billiard table moved and while others' were cringing at how heavy the table was going to be; Brian volunteered without any questions. Brian has a kind spirit.

If you have any further questions, please contact me at 717-658-6711.

Thank you for your consideration.

Yours truly,

Cree C.E Fix

Bobbi Clark
183 N Hess Road
Hustontown, PA  17229

February 6, 2017

To Whom It May Concern:

I have known Brian for many years.  His parents and I attended the same school.

I have worked with Brian at Clark Farms, unloading hay and cleaning stables, and at Kee-ta Quay Construction we flagged together on the same project.  He was always on time, hard-working, jumping in to help when he saw you needed something.

He has also done some home repairs and painting for me personally.  He does excellent work; very neat, organized, clean, and trustworthy; as he did some of this work while I was out of town on vacation.

Brian has always been very polite, professional, and a pleasure to work with.

Thank you for your time.

Sincerely,

Bobbi Clark

Bobbi Clark



# Kee-ta Quay

# Construction, LLC

P.O. BOX 388 • HUSTONTOWN, PENNSYLVANIA 17229
TELEPHONE (717) 987-3518
FAX (717) 987-3385

February 8, 2017

To Whom It May Concern:

I am writing in reference to Brian Hess.

Brian began working with me on my family's farm approximately twenty-two years ago. At that time he helped with taking care of the animals, putting hay in the barn, and cleaning manure. He was always hard-working and prompt.

In April of 2013 he came to work for me at Kee-ta Quay Construction as a carpenter/laborer. He was always early to meet with his crew, brought the proper tools, and never complained of the hours or weather conditions. Brian is a good carpenter. He is very conscientious of his work. He decided that he would like to pursue self-employment again at the end of the 2014 construction season.

If I can be of further assistance, please feel free to call me at (717)987-3518.

Thank you for your consideration.

Sincerely,

Jack A. Clark

Jack A. Clark
Sole Member

To Whom It May Concern,

Brian has been my neighbor for the past 6 years.  He is a good neighbor that always
offers to help if  needed.  He is a true and loyal friend.

Brian is the type of person that when you ask him to do something he is true to his word
and does it.  He is the person you go to if you need help, someone to talk to or just hang
out.  Brian doesn't care that I am old enough to be his pap, he treats me like I'm his best
friend and that's how I feel about him also.

Brian is a good old boy that is as honest as they come.

To Whom it May Concern,

I just want people to know what a good person Brian is. We Ride horses together and he always looks out for me and everyone else. He is a true friend that is as honest as they come. If he says he is going to do something or be somewhere he is. He is a loyal friend. You don't find people like him anymore expecially at his age. I'm proud to say he is my friend.

Sincerely,

James A Shell

To Whom this may concern,                    Jan. 27, 2017

Brian Hess has always been a kind and loyal friend to my family and I. We can always count on him to do what he says he will. We have come to consider him like "family" over the years.

If anything ever comes up that we need help, he's the type of person that is right there to help! We will do the same for him.

Juanita Hochstutler

To Whom it May Concern:

I would like to speak to the character of Brian Hess. I know that you don't know him, and I wish you did, because you would see a wonderful man that made one huge mistake. I've known Brian most of my life. We went to the same elementary and high school. He also worked on my family's farm for a few years. He has always been a hard working, caring, humble, and respectful man. All of those are reasons I fell in love with him. Brian and I have been dating for the past 5 years, and they have been the most amazing 5 years of my life. I will say that this has not been the easiest of times for our relationship, and eventhough I am not happy about the mistake he's made, I know it's just that, a mistake. I can promise you that he feels remorse for what he's done, and I can guarantee it would never happen again. I plead for your mercy when determining the final punishment for Brian. He's not only my significant other, but also my shoulder to cry on, my person to celebrate with, my best friend, and most importantly, my soul mate. All of

these are my reasons to ask that you find it in your heart to not break mine, because if you take Brian away from me, that's what will happen, my heart will break. I know you have a job to do, and I'm sure you do it well, but I just ask for your leniency when casting judgement.

Thank you for taking the time to read this.

Sincerely,

*Falon Clark*

Falon Clark

Lois L. Clark
P O Box 566
Hustontown, PA  17229

January 23, 2017

To Whom It May Concern:

I have known Brian Hess since birth.  He was born and raised approximately two (2) miles from my home.  He was always, to my knowledge, a good child and well behaved.

Brian came to work on my farm when he was about thirteen years old. He helped make hay and clean stables. I have a cattle and horse farm, approximately seven-hundred acres; he worked for me for three summers. Brian learned to run a skid steer, tractors, and numerous pieces of equipment.

Brian was always mannerly and respectful to everyone. We used to ride horses together and had a lot of fun.

As an adult, Brian has done many repairs for me at my home and my rental homes. He does excellent work, very particular and neat. He is a fine young man.

Thanking you in advance for reading this.

Sincerely,

Lois L. Clark

To whom this may
concern:

I want to tell you
what I think of the
character of
Brian D. Kerr.

I think he is an
outstanding citizen in
the community.

I have gone up in ation
with him and his
girlfriend he has been
nothing but very helpful
with everything

He also watched for
me 2½ mo. this will will
this stid in IDdy goodend
doing a very good fit.
I had a new job
I installed my Entis
finisher. He was
always on time &
worked the time he
was well. No going to

The way I see he is
a good person who
make a mistake.

27

We all make mistakes.
No one is perfect.

We hav trials now and
my whole family with
respect.

In my heart I know
Brian is not the kind
of person he would be
held for 25 yrs.

Thank You
Dorothy Stoppe

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY** certify that on June 27th, 2017, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notification of such filing to the following:

**Andrea Lynn Hertzfeld**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252-7808
Fax: (202) 353-7634
Email: andrea.hertzfeld@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

Respectfully submitted,

/s/ Dennis E. Boyle, Esq.
Boyle Frost, Attorneys at Law
1629 K Street NW, Suite 300
Washington, D.C. 20006
Office: (202) 640-1415
Facsimile: (888) 235-8405
*Dennis.boyle@boylefrost.com*
Counsel for Brian Dennis Hess