### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.: 17-CR-2 (KBJ)** |
| | : | |
| **v.** | : | |
| | : | |
| **BRIAN HESS** | : | **SENTENCING**: July 11, 2017 |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case.[1]  For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of incarceration of 60 months, followed by 120 months of supervised release. The defendant is also statutorily required to register as a sex offender.  In support of this recommendation the government relies on the following points and authorities, as well as such other points and authorities as may be cited at the sentencing hearing.

### I.     BACKGROUND

#### A.  Procedural Posture

The defendant, Brian Hess, was arrested in November, 2016 in the United States District Court for the Middle District of Pennsylvania for conduct that occurred between September 28, 2016 and October 4, 2016.  The defendant was released to the third party custody of Patricia Hess on November 17, 2016 and ordered to appear in this jurisdiction. On November 22, 2016, the defendant made his initial appearance in the United States District Court for the District of

---

[1] The Court set a date of June 27, 2017 for the filing of sentencing memorandum in this case. However, the final presentence report was not filed with the Court until June 28, 2017.  Accordingly, the United States was delayed beyond the filing deadline in finalizing this memorandum.  To the extent necessary, the United States seeks leave of the Court to late-file this memorandum as a result.

Columbiaand remained on release status with electronic monitoring and other conditions with which he has been compliant. On January 5, 2017, the United States Attorney for the District of Columbia filed a one-count Information charging the defendant with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). On April 7, 2017, the defendant pled guilty to the Information, pursuant to a written Rule 11(c)(1)(C) plea agreement. He was then remanded to custody. The Court set sentencing for July 11, 2017.

### B. Statement of Offense

As a part of a multi-jurisdictional Federal Bureau of Investigation (FBI)/MPD Child Exploitation Task Force, Detective Timothy Palchak of the District of Columbia Metropolitan Police Department posted an advertisement in a predicted area of Craigslist that is often frequented by individuals who have a sexual interest in children and incest. The particular advertisement posted by Palchak was intended to attract individuals with a sexual interest in children.

On September 28, 2016 the defendant responded to the advertisement through an email which stated, "Hey. I'm a fellow perv. If you want to chat let me know." Palchak responded, "Sweet, yes, you a young dad too into taboo/incest?" The defendant responded, "Yep. Very open minded and pervy. No limits here."

The email chat progressed, during which the defendant informed Palchak that he had a 6-year-old daughter. The defendant told Palchak that was not sexually active with his daughter but he enjoyed watching her run around nude and that he had taken nude photographs of her. The defendant then asked Palchak if he was ". . . from the Green Castle area? I didn't know if maybe it was possible that out daughters get together sometime if you were in the area."

Palchak then told the defendant that he had pictures of his purported 9-year-old daughter and provided the defendant with his cellular telephone number. The defendant expressed being

2

anxious about contacting Palchak on his cellular telephone, but later that day the defendant text messaged Palchak.

An exchange of text messages ensued, during which the defendant sent Palchak various photographs of a girl he claimed to be his daughter. He sent a total of six of these images to Palchak. The first of these images was of a prepubescent girl wearing a two-piece bathing suit; a wooden coffee table and blue couch in the background. The second image appeared to be the same girl resting on her back on the blue couch, with blue tights on, and her legs spread open. The third image appeared to be the same child, this time sitting in front of a blue couch naked with her legs spread open, exposing her vagina. The fourth image depicted the same girl, sitting on a blue couch naked while putting on a pair of yellow panties. The fifth image showed the same girl standing up but completely naked. The sixth image depicted the same girl standing up, wearing a pair of blue tights pulled up to her knees, and exposing her vagina.

In the middle of these exchanges, Palchak asked the defendant to take a picture of himself holding up his two fingers in front of the blue couch in order to validate that the pictures the defendant were sending were in fact of his daughter. The defendant then sent Palchak an image of his two fingers in front of what appeared to be the same blue couch depicted in the pictures of his purported daughter.

The defendant also informed Palchak that he was in contact with a dad in Ohio who had sent the defendant photos of his prepubescent 9yearold daughter. The defendant then sent these photos to Palchak. The first photo depicted a prepubescent girl lying naked on her side; her bare buttock and vagina are exposed. The second photo depicted what appeared to be the same girl lying naked on her back, with her legs completely spread, exposing her bare vagina. The defendant

then sent another photo of his purported daughter. This time the photo depicted a prepubescent girl lying on a purple exercise ball completely naked, exposing her buttocks and bare vagina.

On October 4, 2016, Palchak sent the images from the defendant to the National Center for Missing and Exploited Children's (NCMEC) Child Victim Identification Program. A review of the images revealed that the girl the defendant claimed was his daughter had previously been identified by NCMEC as a child victim of sexual abuse in a previous case that did not involve the defendant. FBI therefore concluded that the images the defendant sent were not of his actual daughter.

FBI agents identified the defendant through telephone and other records. On October 4, 2016, an FBI agent dialed the defendant's cellular telephone number. An unidentified man answered the phone, and the FBI agent asked for "John Grigannis." The unidentified man indicated that he was not John Grigannis, so the FBI agent hung up. The defendant then text messaged Palchak for the first time since their exchange on September 28, 2016.  His text message was about the phone call he received.   Specifically, the defendant asked Palchak if his name was "John Gruganis," and expressed that the call left him feeling unnerved.

The defendant was then arrested on November 17, 2016, at which time FBI agents seized his cellular telephone. The cellular telephone was forensically analyzed and was found to contain over 600 images of child pornography, including images depicting sadomasochistic acts involving children and images depicting sexual acts being performed on prepubescent children.

## II.    SENTENCING CALCULATION

### A.  Statutory Penalties

The offense of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), carries a mandatory minimum sentence of five years imprisonment and a maximum sentence of

twenty years imprisonment; a fine up to $250,000; and a terms of supervised release of not less than five years and up to life. See PSR at 1. Pursuant to 18 U.S.C. § 3663A, restitution is mandatory.  PSR ¶ 113.

Pursuant to the Sex Offender Registration and Notification Act (SORNA) 18 U.S.C. § 2250, 42 U.S.C. § 16911(3)(B)(iii) and 1619(a)(2), the defendant is required to register as a sex offender for a period of twenty-five years.  He must keep this registration current in any jurisdiction he resides in, works in, and/or is a student in. Id. at ¶ 19.

Pursuant to 18 U.S.C. § 3013 there is a mandatory special assessment fee of $100. Such fee is payable to the Clerk of the United States District Court for the District of Columbia. Id. at ¶ 109.

Further, the defendant is subject to the provisions of the Justice for Victims of Trafficking Act of 2015.  Under this act, the Court must assess an amount of $5,000 per count, on any non-indigent person or entity convicted of an offense under 18 U.S.C. § § 77, 109A, 110, or 117. See ¶ 111.

### B.  Guidelines Range

The presentence report writer calculated the defendant's Guidelines Sentencing Range as follows: a base offense level of 22, pursuant to U.S.S.G. § 2G2.2(a)(1).  See PSR at ¶ 96. The PSR writer applied five specific offense characteristics: (1) the offense involved images of a prepubescent minor under the age of twelve, pursuant to U.S.S.G. § 2G2.2(b)(2)(+2 levels); (2) the offense involves the distribution of child pornography, pursuant to U.S.S.G. § 2G2.2(b)(3)(F) (+2 levels); (3) the material portrayed sadistic or masochistic conduct, pursuant to U.S.S.G. § 2G2.2(b)(4) (+4 levels); (4) the offense involved the use of a computer, pursuant to U.S.S.G. § 2G2.2(b)(6)(+2 levels); (5) the offense involved more than 600 images of child pornography,

pursuant to U.S.S.G. § 2G2.2(b)(7)(D)(+5 levels).  Finally, pursuant to U.S.S.G. §§ 3E1.1(a) and (b), the government agreed to a 3-level reduction for the defendant's acceptance of responsibility. Id. at 96. There are no further adjustments that apply. Therefore, the United States agrees with the PSR writer that the Total Offense Level is at least 34. Id.

The government agrees that the defendant has a criminal history score of zero with a projected criminal history category of I.  Id. at 97. With an offense level of 34 and a criminal history of I, the defendant's sentencing range of imprisonment is 151 to 188 months and the fine range of $35,000 to $350,000. Id.

The United States agreed as part of the plea in this case to cap its allocution at sentencing to the statutory mandatory minimum sentence of 60 months imprisonment.  Id. at 98.

## III.     GOVERNMENT'S RECOMMENDATION

### A.  Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).   Thus, the Court invalidated the statutory provision that made the United States Sentencing Guidelines mandatory, 18 U.S.C. § 3553(b)(1).  Booker, 125 S. Ct. at 756.

Post-Booker, the Supreme Court has stated that a district court should begin all sentencing proceedings by calculating the applicable guidelines range. See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").  After both parties have the  opportunity to argue for what each believes is an appropriate sentence, the district court will then consider all of the factors depicted in 18 U.S.C. § 3553(a).  Id.  These factors include "the nature and

circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

**B.      Basis for the Government's Recommendation**

Given the particular circumstances of this case, the government submits that incarceration for a period of sixty months, followed by 120 months of supervised released, and the specific conditions of supervision recommended by the United States Office of Probation, are appropriate and warranted.

To the defendant's credit, the defendant's conduct in this case does not fit into any larger pattern of criminal conduct.  Indeed, this is the first time the defendant has ever been charged with a crime. Further, the defendant accepted full responsibility for the crime. The defendant did so in a timely manner that allowed the Government to avoid preparing for a trial. Given these factors, the United States believes that a sentence to the mandatory minimum period of incarceration, though below the advisory guidelines range, is appropriate to effectuate the goals of sentencing, including providing just punishment and deterring the defendant and others from similar future conduct.

**1.      The Nature and Circumstances of the Offense**

The nature of the crime committed by the defendant is deplorable.

The defendant sought out an individual online who he believed shared an interest in abusing children to discuss his interests in child pornography, and to share images of his purported prepubescent daughter engaged in sexually exploitative conduct.  It was fortuitous that the individual with whom the defendant was communicating was an undercover agent.  Had the defendant been chatting with an individual who, as he believed, shared the defendant's sexual interest in children, the defendant would have been further contributing to the perpetuation of the market for child pornography.

Particularly disturbing was the fact that the defendant distributed images of child pornography while holding himself out online to be a child sexual abuser of his own child.  The defendant maintained this identity to barter for child pornography.  While it was later discovered that, fortunately, the defendant did not in fact have a daughter, and that no child was actually in danger, the defendant's willingness to hold himself out as a hands-on sexual offender against minors and pornography producer in order to trade child pornography and build his own collection of such material is a fact warranting significant punishment.  Defendant's success in collecting child pornography was evidenced by the fact that, when his cellular telephone seized by the FBI, thousands of exploitative images of children being sexually abused by adults were recovered. Included among those images were depictions of violence, as well as vaginal and anal penetration of infants and toddlers by adults.

The defendant clearly knew that his conduct was wrong and illegal.  During the course of his conversation with Palchak, the defendant expressed his anxiety over the conversation.  To his credit, however, when he was arrested and interviewed by the FBI, the defendant accepted responsibility for his actions and fully cooperated with the agents. Although the nature of his conduct – both the distribution of child pornography and the means by which he did so – is

egregious, the defendant is entitled to credit for his immediate acceptance of responsibility and cooperation.

2.      **The Defendant's History, Characteristics, and Cooperation**

A sentence at the mandatory minimum is warranted by the fact that this is the defendant's first offense and by the fact that he accepted full responsibility for the crime.

The defendant has never previously been convicted of a crime. The circumstances of this crime seem to be the product of single course of very bad judgment. The defendant told the PSR writer that he was a viewer of adult pornography and that he eventually escalated into viewing child pornography.  See PSR at 73.  He denies that he has a sexual attraction to children, or that he has ever had sexual contact with a child. Id.  The government's investigation yielded no evidence to the contrary.

The defendant's conduct here seems to be an aberration in an otherwise seemingly sterling background.  The defendant indicated that he had a "normal, happy childhood," and, fortunately for him, his parents have been supportive despite his criminal conduct. Id. at 61.  A mental health assessment of the defendant showed no signs of mental illness. Id. at 72.  With the exception of this conduct, it appears that the defendant has been a productive member of society, graduating high school graduate and coming to be the owner of Hess Construction. Id. at 78 and 79.

It is equally important for the court to note that the defendant accepted full responsibility for his crime. When the defendant was arrested, he confessed to the crime during the ensuing interview by the FBI agents. He never tried to deny or cover up any of the facts of his crime. He also consented to a search of his cellular telephone that he had used to send child pornography. At one point during the interview, the defendant had a conversation with his girlfriend in which he explained his arrest, and told her that he was the sole reason he was in this position and that he could not lie to the FBI. During his interview, the defendant seemed remorseful and blamed no

one but himself.  See FBI Interview of Hess at 1.  Further, the defendant accepted full responsibility for his crime in a timely manner, such that the government did not have to expend its resources preparing for trial.

The government believes that, should the Court order the intervention plan proposed by the U.S. Probation Office,  the defendant has the opportunity during his incarceration to engage in therapeutic interventions to help him identify the cause of his behavior and learn the self-discipline required not to partake in such behavior again. The government believes that given his history and cooperation in this case, that 60 months will serve as an adequate time to achieve these goals.

###   3.   Punishment, Deterrence, Protection, and Correction

When sentencing the defendant, the court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Given the context of this case, the government's recommended sentence is sufficient and is not greater than is necessary. The defendant's conduct caused real harm to the child victims depicted in those images that he possessed and distributed.  Given the lasting harm to the children who are portrayed in such images, the defendant's conduct perpetuating the market for child pornography warrants a minimum of 60 months incarceration.  The mandatory minimum of 60 months justly reflects the seriousness of his offense, punishes the defendant adequately, shows the

victims the seriousness with which the courts take such victimization of children, and promotes respect for the law.

In this case, the defendant was remorseful and explained that he deleted messages and images that had to do with the crime because he knew what he was doing was wrong. The defendant never denied his guilt and blamed only himself.  Accordingly, the government believes that 60 months in prison will adequately deter a man who has already shown that he understands that what he did was wrong and that he is remorseful for such wrongdoing. The government also believes that 60 months in prison is enough time to protect society from further crimes by the defendant, and to provide him with the necessary correctional treatment.

4.    **Available Sentences**

Given the guidelines range applicable to the defendant, he should be sentenced to a term of incarceration.  The defendant is in Zone D of the Guidelines and is therefore not eligible for a probationary sentence.

In addition, the defendant is required to a term of supervised release of no less than 5 years. The government believes, however, that given the nature and circumstances of the offense, 10 years of supervised release is appropriate to ensure that the defendant does not reoffend. Further, the government believes that the defendant's condition of release should include the statutorily required sex offender registration, and computer search and monitoring. The defendant used his cellular telephone to distribute child pornography. This conduct justifies the monitoring of his future use of electronic devices.

5.    **Restitution**

The government has provided notice to the known victims whose images were possessed by the defendant but has not, to date, received requests for restitution from any of those victims. Should the government receive any requests for restitution between the date of this filing and the

end of the 90-day statutory period post-sentencing during which the Court may make a final determination of any victim's losses pursuant to 18 U.S.C. § 3664, the government will submit those restitution requests to the Court.

IV.   **CONCLUSION**

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of 60 months of imprisonment, followed by 120 months of supervised release, with the recommended conditions of supervision, including the mandatory period of sex offender registration.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY

/s/_____
Andrea Lynn Hertzfeld, D.C. Bar 494059

Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7808
Andrea.Hertzfeld@usdoj.gov